# Batch v. Batch, Appellant.

*Adultery—Evidence—Insufficiency.*

In an action for divorce on the ground of adultery, the testimony of one witness that the respondent and a man were in a room together in the day time, is not sufficient to establish the charge. In the absence of stronger evidence of the respondent's guilt a decree should be refused.

Argued April 20, 1925. Appeal No. 191, April T., 1925, by respondent from decree of C. P. Washington County, August T., 1923, No. 140, granting a divorce in the case of Stephen Batch v. Bessie M. Batch. Before HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

60, (1926).]   Statement of facts—Opinion of the Court.

Libel in divorce a vinculo matrimonii.  Before Cum-
mins, J.

The facts are stated in the opinion of the Superior
Court.

The case was referred to A. R. Witherspoon, Esq.,
as Master, who recommended that a decree be refused.

On exceptions to the Master's report the court re-
versed the finding of the Master and granted a di-
vorce.  Respondent appealed.

*Error assigned,* among others, was the decree of the
court.

*George H. White, Jr,* for appellant.

No appearance and no printed brief for appellee.

Opinion by Trexler, J., July 9, 1925:

The libel charges the respondent with adultery, com-
mitted with one Walter Lowery on the 5th day of No-
vember, 1920.  The master did not deem the evidence
sufficient to establish the charge.  The court below sus-
tained the exceptions to the master's report and
granted the divorce.  There was much evidence taken
which was incompetent and confining ourselves to that
which has relation to the cause of divorce stated in
the libel, we have come to the same conclusion as the
master, that the divorce should be refused.

The witness, Green, who testified to the visit of re-
spondent to Pittsburgh where the alleged offense was
said to have been committed, stated that in the fall of
1920 he received a letter from Mrs. Batch, the respond-
ent, in which it was stated she had a friend, a Mr.
Lowery, coming to town and she wanted to take him
somewhere and get him a room.  She wanted the wit-
ness to get a room for her friend, not for her.  When
he met them he took them to a house in Vine Street,
Pittsburgh, which was a rooming house the witness

said and not a bed house. He accompanied them to the living room and they went upstairs while the witness remained in the sitting room. They came down and went out and took lunch together. There is nothing said as to how long they were up in the room nor what kind of a room it was; there was evidence that the only time elapsed was that which enabled them to go up to the room and leave the baggage there. There is absolutely no testimony that they returned to the house, but on the contrary, Mrs. Batch spent the night at the home of a Mrs. Clay. There was some testimony that the parties met the day after. There seemed to be no secret about the matter that they were friends. The wife had told her husband that she had met Lowery; that he was a policeman who had been kind to her in obtaining payment for a hat which had been stolen from her and the husband admits that the money she received she paid to him. There was testimony that the house in which she secured a room for Lowery was a bawdyhouse. This, however, was contradicted, but assuming that that were true, there is absolutely no testimony which showed that she knew it had that character or that she in her communication with Mr. Green asked that a room be secured in any such house. All that Green testified was that her request was that he should secure a room for her friend. She testified that Lowery was not interested in her but in an intimate friend of his, a Mrs. Cole, who lived at the same place where Lowery was living and that Mrs. Cole had requested her to secure the room for him. We cannot infer on the testimony, as presented, that the charge of adultery has been proven. The testimony of the principal witness for the libellant and the only one who testified to the facts from which we are asked to infer the commission of adultery was so unsatisfactory that the libellant's counsel was compelled to ask the master to regard him as a hostile witness in order to

overcome the force of his testimony which tended to exculpate the participants. The libellant failed to prove his case.

The decree of the lower court is reversed and the record is remitted so that the lower court may refuse the divorce, and dismiss the libel, appellee to pay the costs.